**JACKSONWHITE**
ATTORNEYS AT LAW
*A Professional Corporation*

40 North Center Street, Suite 200
Mesa, Arizona  85201
Telephone No.:        (480) 464-1111
Facsimile No.:         (480) 464-5692
Email:            centraldocket@jacksonwhitelaw.com
*Attorneys for Plaintiff*
By:     Nathaniel J. Hill, SBN 028151
          Email:          nhill@jacksonwhitelaw.com

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Jaimie Otterson, a married woman filing individually,<br><br>Plaintiff,<br><br>v.<br><br>The Learning Experience Systems LLC, a Delaware limited liability company; and TLE at Mesa, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>(Violation of the Family and Medical Leave Act; Retaliation in Violation of A.R.S. § 23-1501(3)(c)(ii); Failure to Pay Wages)<br><br>(*Jury Trial Requested*) |

Plaintiff Jaimie Otterson, by and through her counsel undersigned, and for her Complaint, alleges as follows:

### INTRODUCTION

1.     Plaintiff Jaimie Otterson is female.  Plaintiff was formerly employed by Defendants The Learning Experience Systems LLC (hereinafter "TLE") and TLE at Mesa, LLC (hereinafter "Eastmark") as a director.

2.     Plaintiff performed her job duties with TLE and Eastmark at or above satisfactory levels.

3. Despite acceptably performing her job, Plaintiff was terminated while she was off work on FMLA/maternity leave for the birth of a child. Shortly before her discharge, Plaintiff engaged in protected activities concerning TLE's operating without proper management in violation of state license requirements. After her reports to the Arizona Department of Health Services ("DHS") and TLE that TLE and Eastmark were operating without proper management, Plaintiff was retaliated against.

4. At the time of Plaintiff's termination, Heather Dins, Arizona Regional Manager for TLE, told Plaintiff that anyone who was working at TLE/Eastmark at the time of a parent complaint of a child being scratched and bruised in May 2021, or who was involved with the DHS investigation of the complaint on May 20 and 21, 2021, was being terminated. However, Plaintiff was the only employee specifically terminated regarding the DHS investigation on June 28, 2021. Plaintiff was also the only employee who had recently given birth. Additionally, Plaintiff was on FMLA/maternity leave at the time of the incident and investigation and was not working at the facility.

## I.  NATURE OF CLAIM

5. This is a proceeding for injunctive relief and damages against Defendants to redress the deprivation of rights secured to Plaintiff by the Family and Medical Leave Act, and 29 U.S.C. § 2601, *et seq.* and 29 C.F.R. § 825.107, A.R.S. § 23-1501(3)(c)(ii), and A.R.S. § 23-355.

## II.  JURISDICTION

6. This action arises from the illegal employment actions of Defendants within the jurisdiction of this Court under the statutes of the United States involving violations of the FMLA and the Arizona Employment Protection Act ("EPA").

7. As this matter arises under federal statute, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and pursuant to the FMLA, 29 U.S.C. § 2601, *et seq*.

8. This Court also has supplemental jurisdiction over the state law claims raised in this action pursuant to 28 U.S.C. § 1367(a).

9. This Court has subject matter jurisdiction over Plaintiff's FMLA claim.

### III. VENUE

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), 29 U.S.C. § 2601, *et seq.*, and 28 U.S.C. § 1367(a), because the acts detailed in this Complaint occurred within the State of Arizona and the jurisdiction of this Court.

11. The United States District Court for the District of Arizona has personal jurisdiction because Defendants conduct business within this District and the actions giving rise to this Complaint occurred in this District.

### IV. PARTIES

12. Plaintiff Jaimie Otterson is, and at all times relevant to this action has been, a married woman residing in Maricopa County, Arizona.

13. Defendant TLE is a Delaware limited liability company doing business in the state of Arizona.

14. Defendant Eastmark is an Arizona limited liability company with its principle place of business in Maricopa County, Arizona.

15. At all relevant times, Plaintiff was an "employee" of TLE and Eastmark within the definition of 29 U.S.C. § 2601 *et seq.* of the Family Medical Leave Act ("FMLA") and the EPA. Eastmark is a "successor in interest" under the FMLA to the prior entity, Siya Ram Investments LLC, because of the factors enumerated in 29 C.F.R. § 825.107. Therefore, at the time of the events that give rise to her claims, Plaintiff had been employed by TLE and Eastmark more than one year and had worked more than 1,250 hours during the year.

16. At all times relevant to this action, TLE was an employer as defined in 29 U.S.C. § 2601, *et seq.* of the FMLA and interpretive cases, regulations, and authorities. *See* 29 C.F.R. § 825.107. TLE employed more than 50 employees within a 75 mile radius of the location where Plaintiff worked.

17. At all times relevant to this action, Eastmark was an employer as defined in 29 U.S.C. § 2601, *et seq.* of the FMLA and interpretive cases and authorities. Eastmark

1. employed more than 50 employees within a 75 mile radius of the location where Plaintiff worked.

18. At all material times hereto, TLE and Eastmark are employers as defined in 29 U.S.C. § 2601, *et seq*. of the FMLA because they are an integrated employer or joint employer deemed to be a single entity with other TLE entities.

19. Under 29 C.F.R. § 825.104(c), separate entities are deemed to be parts of a single employer for purposes of FMLA coverage if, among other factors, there is common management, interrelation between operations, centralized control of labor relations, and the degree of common ownership/financial control.

20. In addition to Defendants TLE and Eastmark, other entities include The Learning Experience, The Learning Experience Gilbert-Higley, The Learning Experience Happy Valley, The Learning Experience in Gilbert, AZ, The Learning Experience Palm Valley, TLE at Gilbert-Barbarita, LLC, TLE at Goodyear, LLC, TLE at Mesa-Guadalupe, LLC, TLE at Phoenix-50th Street, LLC, and TLE at Phoenix-Happy Valley, LLC. All of these entities have common management of TLE.

21. All of these entities operate as The Learning Experience utilizing the same logos and business fronts, common management, centralized control of labor and training, a degree of common ownership, and have an interrelation of operations. Furthermore, all of these entities utilized a central office for human resources issues, payroll, and other labor related issues.

22. Accordingly, Defendants TLE and Eastmark are covered employers under the FMLA because they are an "integrated employer" as defined by the FMLA and accompanying regulations.

### V.   FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**A.   The Successor in Interest relationship between TLE and Eastmark.**

23. Siya Ram Investments LLC was the former employer that was succeeded by Eastmark.

24. In or around June 2021, TLE terminated the franchise relationship with Siya Ram Investments and became the successor in interest by creating the entity, TLE at Mesa, LLC.

25. TLE and Eastmark are the successor entity of Siya Ram Investments.

26. After the takeover by TLE from Siya Ram Investments, TLE and Eastmark subjected Plaintiff to adverse employment actions, including violations of the FMLA and terminating her employment.

27. After the takeover by TLE from Siya Ram Investments in June 2021, Plaintiff asked Heather Dins, Arizona Regional Manager for TLE, about the status of her FMLA leave due to the change in employers. Plaintiff had been on FMLA leave since May 7, 2021 for the birth of a child. Ms. Dins falsely told Plaintiff that she was not eligible for FMLA leave because Plaintiff was only an employee of the former entity and that she had not worked for TLE for a sufficient amount of time to be eligible for leave. However, Plaintiff was eligible for FMLA leave with TLE because TLE and Eastmark are "successors in interest."

28. TLE and Eastmark's decision to terminate Plaintiff violated the FMLA and other statutes.

**B.    Plaintiff's work history with TLE.**

29. Plaintiff is female.

30. Plaintiff began working for TLE at its Eastmark location on July 26, 2018 as a lead teacher. She left TLE and Eastmark's employ in October 2018 due to family needs. She began working for TLE and Eastmark again in July 2019 as a teacher.

31. In November 2019, Plaintiff was promoted to a position as assistant director.

32. Plaintiff was promoted to a position as director in December 2020.

33. Plaintiff was fully qualified for her director position at TLE and Eastmark.

34. In or around September 2019, Plaintiff discovered that she was not being paid for all her hours worked. Shortly thereafter, between October 8 and 11, 2019, Plaintiff reasonably reported the withholding of her wages to Heather Dins, Arizona

1 Regional Manager for TLE, and Kathy Worrell, the director at Eastmark at the time, both individuals whom she believed to be in a position of authority to investigate her complaint. Following this violation, corporate employees of TLE were frequently present at Eastmark.

35. Later in October 2019, Megan Bryngelson replaced Kathy Worrell as the director at Eastmark.

36. In October 2019, Plaintiff received payment for all her hours worked in 2019. However, she was continually haunted thereafter by the threat of reprisals and retaliation because her report threatened the well-being of TLE.

### C.   Plaintiff engaged in protected activities.

37. On May 7, 2021, Plaintiff began approved FMLA/maternity leave for the birth of a child.

38. Plaintiff's FMLA/maternity leave was approved by Sanjay Patel, the owner of Siya Ram Investments, LLC, the predecessor entity before TLE and Eastmark took over and became the successor entity.

39. Although Plaintiff was on FMLA/maternity leave, she still continued to perform some of her work tasks remotely. For example, customer billings, payroll, and emailing parents.

40. Prior to beginning her FMLA/maternity leave, Sanjay Patel agreed to pay Plaintiff for work performed while on FMLA/maternity, and for six weeks of FMLA/maternity leave. Plaintiff was paid for her work through June 10, 2021. She was not paid for her work from June 11, 2021 through June 28, 2021.

41. On May 20 and 21, 2021, while Plaintiff was still off work on approved FMLA/maternity leave, the Arizona Department of Health Services ("DHS") came to the Eastmark location to investigate a parent complaint of scratches and bruises on the reporting parent's child. The investigation included interviews of staff and students. Plaintiff was not interviewed as she was not present for any of the underlying events or the investigation due to her maternity leave.

42. On May 21, 2021, assistant director Melissa McClung told the DHS licensing surveyor, Barb Iverson, that she did not want to be interviewed and that she most likely would resign her employment with TLE and Eastmark as of Monday, May 24, 2021, rather than be interviewed.

43. The following day, Saturday, May 22, 2021, Ms. McClung informed Ms. Dins, Sanjay Patel, and other employees of TLE/Eastmark that she was resigning effective immediately.

44. Additionally, on or around May 23, 2021, Melissa Cancelli, the child's teacher who was being investigated by DHS, text messaged Plaintiff stating that she was beginning a new job starting Monday, May 24, 2021, and would not be returning to TLE/Eastmark. Plaintiff reported Ms. Cancelli's resignation to Ms. Dins on May 23, 2021.

45. On Saturday, May 22, 2021, Plaintiff spoke with Heather Dins and Melissa McClung by telephone to discuss next steps for Eastmark while she (Plaintiff) was still on FMLA/maternity leave and due to Ms. McClung's departure.

46. On May 25, 2021, Plaintiff learned from Sanjay Patel, the owner of Eastmark at the time, that his fingerprint card had been suspended. According to Mr. Patel, his fingerprint card was suspended due to an altercation in which the police were called.

47. Plaintiff was immediately concerned about the viability of continued operations. Plaintiff contacted Barb Iverson, the licensing surveyor at DHS who was investigating the parent complaint, and asked about the consequences of Mr. Patel losing his fingerprint card. Ms. Iverson told Plaintiff that without a fingerprint card, Mr. Patel could not be at the school. He needed to leave. Plaintiff then reported to Ms. Iverson that because she (Plaintiff) was on maternity leave, and with Mr. Patel being prohibited from being at the Eastmark facility, the Eastmark facility would be operating contrary to licensing requirements because no one else was available with sufficient credentials to

direct or manage the facility—a violation of Arizona law. This report to Ms. Iverson was a protected activity under A.R.S. § 23-1501.

48. With Ms. McClung's departure, Plaintiff on FMLA/maternity leave (and working remotely), and Mr. Patel not allowed to be at the school, there was no management at the school. This caused a shortage of employees, which required some teachers to help up front with checking children in and out and answering phones. Many teachers became scared and some quit their jobs reportedly because of their fears of lack of management at the school.

49. Sometime between May 26, 2021 and May 31, 2021, a teacher at Eastmark called DHS and complained about an incident that occurred at the school. The teacher reportedly complained that they needed help due to a child getting hurt and having a bloody nose. However, when they called up front for assistance no one came to help them.

50. On June 1, 2021, Barb Iverson from DHS again came to TLE/Eastmark to investigate this new complaint.

51. Between May 26 and June 4, 2021, Ms. Iverson spoke with Plaintiff and told her about the new investigation. Plaintiff again reported to Ms. Iverson that there was currently no management at Eastmark due to Ms. McClung's departure, her FMLA/maternity leave, and Mr. Patel not able to be at the school, and asked what should be done. Shortly thereafter, Plaintiff told Ms. Dins about her conversations with Ms. Iverson. Plaintiff also continued to report her conversations with Ms. Iverson to Ms. Dins during multiple telephone conversations and also during a CPR class they both attended at TLE/Eastmark on June 15, 2021. These reports to Ms. Dins were also protected activities under A.R.S. § 23-1501.

52. On or around June 10, 2021, TLE received Ms. Iverson/DHS's report.

53. Shortly thereafter, on or around June 12, 2021, Plaintiff became aware of a job posting for a director position on Indeed. The job posting listed the location as Mesa, Arizona and had the zip code for the TLE/Eastmark school.

54. Following the second complaint to DHS sometime between May 26, 2021 and May 31, 2021, TLE administrators became involved in the investigation. In or around this same time, TLE forced Mr. Patel to relinquish Eastmark permanently to TLE and TLE began managing Eastmark. TLE at Mesa, LLC was formed on June 17, 2021 for the purpose of being a successor in interest of Siya Ram Investments LLC.

55. Plaintiff immediately believed that her job was in jeopardy and sent a screen shot of the job posting to Ms. Dins and asked Ms. Dins if this was her position being advertised. Ms. Dins responded that she had not posted anything, but TLE was interviewing for assistant directors for two new schools in the east valley.

56. Plaintiff again asked Ms. Dins about the job posting in person when they saw each other a few days later. Ms. Dins responded that the job posting was to attract better qualified candidates for assistant director positions. Ms. Dins also reportedly told multiple staff and parents these same reasons for the job posting for Plaintiff's director position. Although Ms. Dins made these representations to Plaintiff, these representations were false.

57. After receiving Ms. Dins' responses, Plaintiff, as a member of management of Eastmark checked the profile of the job posting and the job posting had been made by Stephanie Retherford, Vice President of Operations, Ms. Dins' supervisor.

58. Upon information and belief, Ms. Dins was aware Ms. Retherford had posted the job opening and that it was for Plaintiff's position. Ms. Dins had lied to Plaintiff because TLE was preparing to illegally terminate Plaintiff.

**D.  Plaintiff is terminated.**

59. On June 22, 2021, Plaintiff was preparing to return to work following the birth of her child because Ms. Dins advised Plaintiff she was not eligible for FMLA leave.

60. Plaintiff was preparing to return to work prematurely because she believed, based on Ms. Dins' statements, that she no longer had job protected leave under the FMLA. However, Ms. Dins told Plaintiff that **she could not return to work "right now" until they/TLE heard back from DHS/licensing regarding the results of their**

**investigations.** Ms. Dins assured Plaintiff that she was not being precluded from ever returning to work at TLE and that this was just temporary until TLE received the results of DHS's investigation.

61. Less than a week later, on June 28, 2021, Plaintiff's employment was terminated by Ms. Dins. According to Ms. Dins, anyone who was working at TLE/Eastmark at the time of the parent complaint of her child being scratched and bruised in May 2021, or who was involved with the licensing investigation of this complaint, was being terminated and therefore TLE/Eastmark was ending Plaintiff's employment immediately.

62. Although Plaintiff was employed by TLE/Eastmark at the time of the parent complaint in May 2021, the incident and complaint occurred while Plaintiff was on FMLA/maternity leave and when she was not physically at TLE/Eastmark.

63. Additionally, only one other employee was terminated at the same time as Plaintiff. This employee was reportedly told she was being terminated for failing to respond to the call from the teacher regarding a hurt child, not due to the investigation.

64. Plaintiff's replacement, who was hired approximately a week before to replace Plaintiff, started working at TLE this same day.

65. Following her termination, Plaintiff should have been paid through the date of her termination, June 28, 2021, for work she performed while on FMLA/maternity leave and for six weeks of FMLA/maternity leave as agreed to by the prior entity. However, Plaintiff was only paid through June 10, 2021.

66. Plaintiff worked each business day from June 11, 2021 through June 28, 2021, but was not paid.

67. Additionally, Plaintiff was not paid for 92.66 hours of unused PTO time at the time of her termination.

68. On June 29, 2021, the day after she was terminated, Plaintiff received a letter from an attorney for TLE threatening Plaintiff for having improper contacts with TLE staff and parents. Plaintiff denies that she had any improper contacts. Notwithstanding,

Plaintiff is not aware of any legal or contractual limitation on her ability to have contacts with TLE employees or parents of students.  As a final act of retaliation, this letter was intended to threaten and harass Plaintiff without any legitimate legal basis.

69. On March 18, 2022, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against TLE alleging sex and pregnancy discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.

## COUNT I

**(Violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*.)**

70. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

71. TLE and Eastmark, through its agents, violated the FMLA by interfering with Plaintiff's FMLA protected leave.  TLE and Eastmark demonstrated intention to interfere when they (1) terminated Plaintiff's employment while she was off work for the birth and care of her newborn child and (2) terminated her employment because of her use of job-protected FMLA leave.

72. TLE and Eastmark took these actions in bad faith.

73. TLE and Eastmark consistently failed to give Plaintiff correct information regarding her FMLA rights.  Ms. Dins advised Plaintiff she was not eligible for FMLA leave because she was only an employee of the former entity and that she had not worked for TLE for a sufficient amount of time to be eligible for leave.

74. Thereafter, when Plaintiff was preparing to return to work prematurely because she believed, based on Ms. Dins' statements, that she no longer had job protected leave under the FMLA, Ms. Dins told Plaintiff that **she could not return to work "right now" until they/TLE heard back from DHS/licensing regarding the results of their investigations.**  That statement was intentionally deceptive

75. Employers cannot use the taking or requesting of FMLA leave as a negative factor in employment actions. Plaintiff's termination was clearly a negative employment action because she sought or used FMLA leave.

76. Plaintiff is therefore entitled to compensation in the form of front pay, back pay, employment benefits, liquidated damages, and other compensation denied to her, with interest, by reason of TLE and Eastmark's FMLA violation.

## COUNT II

### (Violation of the Family and Medical Leave Act)

77. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

78. The FMLA, 29 U.S.C. § 2601, *et seq.*, allows an eligible employee to take up to twelve weeks of unpaid leave in any 12 month period for various purposes, including the birth of a son or daughter and to care for the newborn child that makes the employee unable to perform one or more of the essential functions of his or her job.

79. Plaintiff was an eligible employee and Defendants TLE and Eastmark were a covered employer under the FMLA.

80. Plaintiff took time off work between May 7, 2021 and June 28, 2021 for the birth and care of her newborn child.

81. Plaintiff's termination is in whole or in part because she availed herself of qualified FMLA leave.

82. TLE and Eastmark violated the FMLA by interfering with Plaintiff's FMLA rights by unfairly terminating her employment.

83. As provided for under the FMLA, Plaintiff is entitled to collect liquidated damages equal to the sum of her lost compensation, wages, and benefits.

84. As a result of TLE and Eastmark's violations of the FMLA, Plaintiff is entitled to collect wages, employment and pension benefits denied or lost, interest on this amount, liquidated damages equal to the lost compensation, wages, and benefits, including her back pay damages, compensatory damages, and her reasonable attorneys' fees and

costs. Plaintiff is also entitled to reinstatement, or in lieu thereof front pay and other appropriate equitable relief, as well as all other remedies available under 29 U.S.C. § 2601, *et seq*.

**COUNT III**

**(Whistleblower Retaliation in Violation of A.R.S. § 23-1501, *et seq.*)**

85. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

86. As described above, Defendants TLE and Eastmark are employers under the Arizona Employment Protection Act ("EPA"), A.R.S. § 23-1501, because Defendants exercised control over Plaintiff's employment.

87. Under A.R.S. § 23-1501(A)(3)(c)(ii), an employer is prohibited from discharging an employee for whistleblowing activities.

88. In compliance with A.R.S. § 23-1501(A)(3)(c)(ii), Plaintiff disclosed in a reasonable manner to Heather Dins her reasonable belief that Defendants had violated, were violating, or would violate a statute of the state of Arizona. As described above, Plaintiff reasonably believed that Ms. Dins was in a managerial or supervisory position with the authority to investigate and take action to prevent further violations.

89. Plaintiff disclosed her concerns or belief that her employer was operating in violation of license requirements pursuant to A.R.S. § 36-886.

90. Under the Arizona Administrative Code ("AAC"), R9-5-301, there must be a designated facility director. This designated facility director must be conspicuously posted under AAC R9-5-303. The designated facility director, or person who is responsible when the designated facility director is absent, must meet the qualifications set forth in AAC R9-5-401.

91. Because Mr. Patel was no longer allowed at the facility, and Plaintiff was out on FMLA/maternity leave, Plaintiff reasonably believed that the facility was operating in violation of license requirements.

92. Plaintiff first shared this concern with a DHS agent, Barb Iverson, and then reported to Heather Dins that she had done so more than once.

93. Shortly after reporting these issues, Defendants terminated Plaintiff.

94. Plaintiff was terminated in whole or in part because of her whistleblowing complaints.

95. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered humiliation and degradation, pain and suffering, severe mental anguish and distress, has been wrongfully discharged, and has suffered a loss of income in the form of past, present, and future earnings, along with other monetary and non-monetary benefits due to her.

96. Plaintiff seeks, as a result of her wrongful termination, compensatory damages incurred or to be incurred by her in an amount to be determined at trial.

97. Upon information and belief, Defendants acted with an evil mind and intentionally caused damages to Plaintiff or acted with a conscious disregard of a substantial risk of harm that would result to Plaintiff as a result of their actions, permitting Plaintiff to recover punitive damages against Defendants.

## COUNT IV

**(Failure to Pay Wages in Violation of A.R.S. § 23-350, *et seq.*)**

98. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

99. There existed an employment contractual relationship by and among Plaintiff and Defendants TLE and Eastmark in which Defendants were contractually and statutorily required to pay Plaintiff all wages due her as required by law.

100. Plaintiff provided Defendants TLE and Eastmark with labor or services with a reasonable expectation of being paid. The compensation due to Plaintiff by TLE and Eastmark are "wages" as defined by A.R.S. § 23-350(7).

101. Defendants TLE and Eastmark failed to pay Plaintiff all wages earned by Plaintiff in violation of A.R.S. § 23-351, *et seq*. Moreover, as described herein,

Defendants TLE and Eastmark also unreasonably delayed the payment of wages earned by Plaintiff in violation of A.R.S. § 23-351, *et seq*.

102. Plaintiff is owed compensation earned from June 11, 2021 through June 28, 2021 in the amount of $1,738.08 ($16,656.20 (earnings from TLE and Eastmark as of June 10, 2021) / 23 weeks = $724.18 per week, or $144.84 per day, * 12 days = $1,738.08).

103. Plaintiff is also owed for 92.66 hours of unused PTO time in the amount of $1,678.07 ($18.11 per hour * 92.66 hours = $1,678.07).

104. By failing to pay Plaintiff all wages due to her, Defendants TLE and Eastmark have wrongfully violated the provisions of A.R.S. § 23-352 which prohibits an employer from withholding the payment of wages from an employee without legal authority, prior written permission from the employee, or a claim against the employee that would be a set-off against unpaid wages.

105. Defendants TLE and Eastmark do not qualify for an exemption to their obligations to timely pay wages to Plaintiff.

106. Defendants TLE and Eastmark acted in bad faith when they forced Plaintiff to provide services without compensation. Pursuant to A.R.S. § 23-355, Plaintiff is entitled to recover treble the unpaid wages owed by Defendants to Plaintiff.

107. For her wage claim under A.R.S. § 23-355, Plaintiff is entitled to treble damages, totaling $10,248.45.

108. Plaintiff is also entitled to interest thereon at the highest legal rate provided by law until paid in full.

109. Because this is a dispute arising out of a contract, Plaintiff is also entitled to her attorneys' fees and costs pursuant to A.R.S. §§ 12-341 & 12-341.01.

**WHEREFORE,** Plaintiff requests that this Court enter judgment in her favor and against Defendants as follows:

A. Declare that the employment practices complained of in this Complaint are unlawful and that they violate 29 U.S.C. § 2601, *et seq*. (the FMLA), A.R.S. § 23-1501(3)(c)(ii), and A.R.S. § 23-350, *et seq*.;

| | | |
|---|---|---|
| | B. | Order Defendants to make Plaintiff whole, pursuant to 29 U.S.C. § 2601, *et seq.* by reinstating her with full back pay, bridged seniority, and reimbursement for all loss of pension, retirement, insurance, Social Security and other monetary and non-monetary benefits, or, alternatively deny reinstatement because of workplace hostility and other aggravating circumstances and order Defendants to pay Plaintiff's back and front pay and reimbursement for f:\all loss of pension, retirement, insurance, Social Security, and other monetary and non-monetary benefits, all amounts to be proven at trial; |
| | C. | Order Defendants to pay Plaintiff's actual damages in an amount to be proven at trial for all of her claims; |
| | D. | Order Defendants to pay Plaintiff's general and compensatory damages for her economic losses, pain and suffering, emotional distress, harm to reputation and loss of earning capacity, and all special damages or financial losses that Plaintiff has suffered in an amount to be proven at trial; |
| | E. | Order Defendants to pay Plaintiff for loss of fringe benefits in an amount that will be proven at trial; |
| | F. | For additional damages to compensate for the taxation of Plaintiff's economic damages; |
| | G. | For all relief available under the FMLA; |
| | H. | For liquidated damages on Plaintiff's FMLA claims; |
| | I. | Award Plaintiff her unpaid wages under A.R.S. § 23-350, *et seq.* in the amount of $3,416.15; |
| | J. | Award Plaintiff treble damages under A.R.S. § 23-355 totaling $10,248.45; Award Plaintiff prejudgment interest from the date each claim for damages was liquidated; |

K. Award Plaintiff prejudgment interest on all liquidated sums and interest on all sums awarded in judgment at the highest legal rate allowable from the date of judgment until paid;

L. Award Plaintiff interest on all sums awarded in judgment at the highest legal rate allowable from the date of judgment until paid;

M. Order Defendants to pay Plaintiff's court costs, expenses, and reasonable attorneys' fees in connection with this action, as provided in 29 U.S.C. § 2601, *et seq*, 42 U.S.C. § 2000e-5(k), A.R.S. §§ 12-341 & 12-341.01, and any other applicable statutes;

N. Order Defendant to pay Plaintiff compensatory damages and punitive damages sufficient to punish Defendants for their malicious actions and to deter such conduct in the future;

O. Retain jurisdiction over this action to ensure full compliance with the Court's orders and require Defendants to file such reports as the Court deems necessary to evaluate such compliance;

P. Preliminarily and permanently attaching assets and property of TLE and Eastmark sufficient to satisfy their debt to Plaintiff;

Q. Preliminarily and permanently enjoining TLE and Eastmark from alienating or disposing of assets and property in an amount equal to their debt to Plaintiff;

R. For Plaintiff's continuing costs in this matter; and

S. For such other and further relief as this court deems just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

**DATED** this 27th day of June, 2022.

**JACKSON WHITE**

   s/ Nathaniel J. Hill
By:   Nathaniel J. Hill, SBN 028151
40 North Center Street, Suite 200
Mesa, Arizona   85201
*Attorneys for Plaintiff*

F:\MNO\Otterson, Jaimie\Pleadings\Complaint.docx